**MID-CONTINENT SUPPLY CO., a corporation, Appellant,**

v.

**ATKINS & POTTER DRILLING CORP., a corporation; T. E. Atkins and W. L. Potter, Appellees.**

No. 5160.

United States Court of Appeals
Tenth Circuit.

Jan. 3, 1956.

Rehearing Denied Jan. 30, 1956.

Paul G. Darrough, Oklahoma City, Okl. (W. H. Brown and Paul G. Dar-

rough, Jr., Oklahoma City, Okl., were with him on the briefs), for appellant.

George L. Verity and Harry C. Marberry, Oklahoma City, Okl. (Brown & Verity, Oklahoma City, Okl., was with them on the brief), for appellees.

Before BRATTON, HUXMAN, and PICKETT, Circuit Judges.

BRATTON, Circuit Judge.

Invoking federal jurisdiction on the ground of diversity of citizenship with the requisite amount involved, Mid-Continent Supply Co. instituted this action against Atkins & Potter Drilling Corporation, T. E. Atkins, and W. L. Potter. The purpose of the action was to recover personal judgment upon five promissory notes, each for the sum of $4,291.24. The notes were executed by the drilling corporation as principal, were endorsed by the two individuals, and were payable to the order of the supply company. The defendants admitted the execution and endorsement of the notes. But by affirmative defense, it was pleaded that the notes were given for the purchase of an oil well drilling rig which the drilling corporation purchased from the supply company; that as part of the transaction and as security for the unpaid purchase price, the drilling corporation executed a chattel mortgage covering the drilling rig; and that the drilling corporation later turned the rig back to the supply company as full payment of the notes described in the complaint. And by further affirmative defense, it was pleaded that the supply company was estopped to deny payment of the notes. By reply, the supply company denied that the drilling rig was accepted as payment of the notes. And by answer or reply to the affirmative defenses set forth in the answer, it was pleaded that the chattel mortgage was executed upon the express agreement that the drilling rig should stand as security for the notes described in the complaint and for all other indebtedness of the drilling corporation which might thereafter accrue to the supply company either in the form of notes or an open account; that the drilling rig was turned back for the agreed sum of $75,000; that part of such sum was applied on an open account due and owing by the drilling corporation to the supply company; that the balance thereof was applied on the notes given contemporaneously with the chattel mortgage; and that after the making of such application, the notes in suit remained unpaid. And by further answer or reply to the affirmative defenses set forth in the answer it was pleaded that the defendants acquiesced in the application of the proceeds of the drilling rig and therefore were estopped from questioning it herein.

A pre-trial conference was held at which documents were introduced in evidence and admissions of fact were made. Sometime after the pre-trial conference, the court entered judgment in the cause. In such judgment, plaintiff was awarded recovery against the drilling corporation as principal on the notes but was denied recovery against the endorsers, D.C., 128 F.Supp. 473. The supply company appealed from that part of the judgment denying it recovery against the endorsers.

■ The judgment is challenged upon the ground that the supply company made proper application of the entire agreed amount at which the drilling rig was returned; that after such application, the notes in suit remained unpaid; and that therefore judgment should have been entered against the endorsers upon the notes. The chattel mortgage provided in conventional terms that it was given to secure the several promissory notes delivered to the supply company for the purchase price of the drilling rig; and it further provided in clear terms that it should secure any and all future indebtedness of the mortgagor to the mortgagee, including that arising from future sales of merchandise, and other indebtedness whether evidenced by notes or open account. Sometime after the execution and delivery of the notes and mortgage, the drilling corporation delivered the drilling rig back to the supply company at the agreed sum of $75,-

000. In the absence of any directions respecting the application of such sum, the supply company applied it first to the open account and then to the notes. And after the making of such application, the notes in suit remained unpaid. In the absence of a controlling statute providing otherwise, it is the general rule that where a creditor holds different obligations of a debtor, some of which are endorsed or otherwise guaranteed by third parties, and all of which are secured by a mortgage or other equitable lien upon property, unless otherwise directed by the debtor, the creditor may apply the proceeds of a general payment made by the debtor to the obligation or obligations not endorsed or otherwise guaranteed by the third parties. Kortlander v. Elston, 6 Cir., 52 F. 180; Wood v. Noyes, 9 Cir., 279 F. 321, certiorari denied, 260 U.S. 732, 43 S.Ct. 94, 67 L. Ed. 486; Robinson v. Waddell, 53 Kan. 402, 36 P. 730; California National Bank of San Diego v. Ginty, 108 Cal. 148, 41 P. 38; Security Trust & Savings Bank v. June, 38 Ariz. 513, 1 P.2d 970; Livermore Falls Trust & Banking Co. v. Richmond Manufacturing Co., 108 Me. 206, 79 A. 844; Hanson v. Manley, 72 Iowa 48, 33 N.W. 357; Noble v. Murphy, 91 Mich. 653, 52 N.W. 148; Citizens' Bank v. Whinery, 110 Iowa 390, 81 N.W. 694; Tolerton & Stetson Co. v. Roberts, 115 Iowa 474, 88 N.W. 966; Henry v. Safford, 211 Mo.App. 308, 241 S.W. 951; White River Production Credit Association v. Griffin, 198 Ark. 249, 128 S.W.2d 701; Bank of Georgia v. Card, 84 Ga. App. 142, 65 S.E.2d 841. The endorsers seek to avoid the impact of some of these cases by emphasizing the point that in them the obligation endorsed or otherwise guaranteed expressly referred to the mortgage or other lien securing the debt. The promissory notes involved here do not contain any express reference to the chattel mortgage. But the notes and the mortgage were executed at the same time and were integrated parts of a single transaction. The drilling corporation was a comparatively small operating unit. The endorsers were its two chief officers. One of them was its president. And in that capacity, he executed the notes and mortgage for and on behalf of the corporation. The endorsers were familiar with the transaction and knew that the mortgage was being given as security for the notes. And therefore their rights are the same as they would be if the notes contained an express reference to the mortgage.

In an effort to sustain the judgment in their favor, the endorsers rely upon a domestic statute in Oklahoma. It is 15 O.S.A.1951 § 383. In presently pertinent part, the statute provides in substance that a surety is entitled to the benefit of every security for the performance of the principal obligation, held by the creditor at the time of entering into the contract of suretyship. But the statute is not applicable here. It applies where a surety or other person secondarily liable discharges the debt of the principal obligor. Where the surety or other person bearing secondary liability makes such payment, he becomes the creditor and under the statute is entitled to the benefit of the security. Wills v. Fuller, 47 Okl. 720, 150 P. 693. Not having paid or otherwise discharged the debt of the principal obligor, the endorsers are not entitled to invoke the provisions of the statute as a means of escape from liability upon the notes.

In a further effort to uphold the judgment in their favor, the endorsers urge the contention that the general rule authorizing a creditor to make application of a payment on either of two debts where the principal debtor fails to give directions in respect thereto does not apply in this case for the reason that the identical or specific property for the purchase price of which the endorsers obligated themselves was returned to the creditor. The case of Sipes v. John, 177 Okl. 299, 58 P.2d 854, is relied upon to sustain the contention. In that case it was said in substance that where specific money paid or property delivered to the creditor is the identical money or property for the payment or delivery of

which the debtor and his surety obligated themselves, the surety is not bound by an application of such money or property to some other debt for which he is not liable. But in that case the bond executed by the sureties guaranteed payment of one account, not both. The debtor made a payment and the creditor applied it to the unsecured account. Here, the chattel mortgage covered both the notes and the open account; and the entire proceeds of the agreed sum at which the rig was returned was applied to debts secured by the same lien.

Finally, the judgment in favor of the endorsers does not find sustainable support in certain cases upon which the endorsers place strong reliance. The case of First National Bank of Sallisaw v. Ballard, 41 Okl. 553, 139 P. 293, is distinguishable. There the creditor held two notes, both of which bore the signatures of endorsers. One of the notes was secured by a chattel mortgage covering an interest in a crop of cotton. The other was not thus secured. The crop was marketed and some of the proceeds turned over to the creditor were applied to the note not secured by the chattel mortgage. Here, the notes and the open account were both secured by the chattel mortgage. The case of Sipes v. Ardmore Book & News Co., 138 Okl. 180, 280 P. 805, was decisively different from this one. There Sipes and Ardmore Book & News Co. entered into a written contract in which the former delivered to the latter books for sale. The news company was to sell the books, retain a commission, and remit the balance to Sipes. A bond was executed for the faithful performance of the contract. Certain individuals signed the bond as sureties. At the time of the signing of the contract and the execution of the bond, the news company had on hand under a prior contract certain books belonging to Sipes and previously delivered to the news company. The suit was against the news company and the sureties on the bond; and it was held in effect that as to the sureties, Sipes could not apply the proceeds from the sale of books consigned under the contract to a different account and thus indirectly hold the sureties liable for an obligation not guaranteed by the bond. But that was a case in which the bond guaranteed only one of two obligations, not both alike. And the case of Sipes v. John, supra, is distinguishable on similar ground. There the creditor held two accounts. One was secured by a bond with sureties thereon. The other was not. And the creditor applied on the unsecured account proceeds arising from the sale of books in the secured account. Here, both the notes and the open account were secured by the chattel mortgage.

The judgment, insofar as it denied recovery against the endorsers, is reversed and the cause is remanded for further proceedings not inconsistent with the views herein expressed.