### HARTFORD ACCIDENT & INDEMNITY CO. v. CITY OF SULPHUR, OKL.

### CITY OF SULPHUR, OKL., v. HARTFORD ACCIDENT & INDEMNITY CO.

#### Nos. 2294, 2296.

Circuit Court of Appeals, Tenth Circuit.

Nov. 10, 1941.

Rehearing Denied Dec. 15, 1941.

F. A. Rittenhouse, of Oklahoma City, Okl. (John F. Webster, W. D. Hanson, and A. J. Rittenhouse, all of Oklahoma City, Okl., on the brief), for appellant and cross-appellee.

W. J. Williams and E. H. Williams, both of Ardmore, Okl. (J. E. Williams and H. A. Ledbetter, both of Ardmore, Okl., on the brief), for appellee and cross-appellant.

Before BRATTON, HUXMAN, and MURRAH, Circuit Judges.

BRATTON, Circuit Judge.

This appeal and cross-appeal grow out of an action instituted by the City of Sulphur, Oklahoma, against The Hartford Accident and Indemnity Company to recover upon the bonds of certain former officers of the city on which the company was surety.

The complaint contained six causes of action. The first was on the bond of G. Leslie Horsman, city clerk from May 2, 1936, to June 1, 1937. It was alleged that the clerk failed to charge against the appropriations made by the excise board of the county certain accounts for labor, material and supplies in the aggregate sum of $6,293.92; that such accounts were allowed by the board of city commissioners but that no warrants were issued for them; that instead of issuing warrants the accounts were offset with accounts due the city for water furnished the claimants; that warrants were issued for other claims than those offset for the entire amount of the appropriations for the respective fiscal years in question; and that all of the claims offset in the manner outlined were in excess of the appropriations. The second cause of action was on the bond of Newton Rice, clerk from June 9, 1937, to July 6, 1937. It was alleged that like accounts aggregating $486.65 were similarly offset. The third cause of action was on the bond of Charles F. Smith, clerk from August 1, 1937, to May 31, 1938. It was alleged that accounts of the same kind aggregating $3,-793.49 were offset in like manner. And it was further alleged that Smith and Glenn Ray, mayor and manager of the city, failed to account for $7,429.39 which they had received in payment of water bills due the city. The fourth cause of action was on the bond of R. E. Mudd, commissioner from May 7, 1935, to May 7, 1937. It was alleged that Mudd voted to allow and pay the claims described in the first cause of action up to and including those allowed on April 6, 1937; and that with knowledge that such claims had been so allowed and not charged against the appropriation, he and other commissioners allowed claims far in excess of the appropriations made for that purpose. The fifth cause of action was on the bond of John M. Townsley, commissioner from May 3, 1935, to May 3, 1937. It was alleged that Townsley voted to allow and pay the claims described in the first cause of action, up to and including those allowed April 6, 1937; and that with knowledge that such claims had been allowed in that manner and not charged against the appropriation, he and other commissioners allowed claims far in excess of the appropriations. And the sixth cause of action was on the bond of Ray, mayor and manager from May 4, 1936, to May 4, 1938. It was alleged that Ray, as mayor, approved and voted for each of the claims described in the first, second and third causes of action; that he failed to account for funds of the city, as set forth in the third cause of action; and further, that he was authorized to purchase sewerpipe for use of the city in extending its sewer system, that he failed to accept the lowest bid but accepted a higher one, that only 6,500 feet of pipe were needed, that the city received only that amount but that he approved and allowed a claim for 9,200 feet at the price fixed in the higher bid. The city subsequently filed an amendment to its complaint in which it pleaded that since the institution of the suit, it had collected from the surety on the bond of George B. Carr, a commissioner, the sum of $562.50 which had been applied, $174.65 to the claims allowed on May 5, 1936, and $387.85 to those allowed on June 2, 1936; that it had collected from the surety on the bond of Hugh Cushenberry, another commissioner, the sum of $562.50 which had been applied, $104.20 to the claims allowed on June 2, 1936, and $458.30 to those allowed on July 8, 1936; that it had collected from the surety on the bond of Ernest Ball, a third commissioner, the sum of $562.50 which had been applied, $544.64 to the claims allowed on May 4, 1937, and $17.86 to those allowed on June 1, 1937; and that the prayer of plaintiff should be therefore reduced in the sum of $1,687.50, or to the sum of $20,745.95, together with interest thereon from May 4, 1938.

The company filed its answer and third party complaint, bringing in the respective principals on the bonds in suit, except Horsman. The execution of the bonds was admitted. In respect to the causes of action on the bonds of the clerks, the company pleaded that the acts of the clerks were merely clerical or ministerial and created no liability, and that the causes were barred by limitation. In respect to the causes of action on the bonds of the commissioners, it joined issue, denied liability or the existence of any cause of action, denied that the commissioners had voted for the allowance of the claims, and pleaded limitation. In respect to the cause of action on the bond of the mayor and manager, it joined issue, denied that the principal had voted for the allowance of the claims, pleaded limitation as to recovery for the allowance of such claims, denied that funds belonging to the city had been withheld, denied any irregularity in the purchase of sewer pipe, and pleaded that the city re-

ceived and used all pipe purchased. In addition, the pleading contained appropriate allegations as a third party complaint for recovery against the third party defendants.

On the day of the trial plaintiff dismissed the second cause of action, and the company dismissed its third party complaint against Rice. The court determined that the offsetting of water bills with claims for labor against the city was not authorized by law, and that the company was liable on the bonds of the mayor and manager and the two commissioners; that the causes of action on such bonds were not barred by limitation; that the causes of action on the bonds of the clerks were barred by limitation; that the city was not entitled to recover for the alleged withholding of city funds or for the alleged irregularities in respect of the purchase and use of the sewer pipe; and that the company was entitled to credit on the amount due for the entire sum which the city received from the sureties on the bonds of the other commissioners. Judgment was entered accordingly. By appeal the company challenges on several grounds the judgment rendered against it, and by cross-appeal the city urges that the court erred in holding that the causes of action on the bonds of the clerks were barred by limitation, in failing to render judgment in its favor for the alleged withholding of city funds and for the alleged wrongful acts of the mayor and manager in connection with the purchase and use of the sewer pipe, and in allowing the company credit for the full sum received from the sureties on other bonds.

■ As already indicated, the city sought in the first and third causes of action to recover upon the respective bonds of two clerks for their acts in connection with the offsetting of water bills due the city with claims against the city for labor performed. The last offsetting pleaded in the first cause of action occurred on June 1, 1937, the last alleged in the third cause took place on April 1, 1938, and the suit was filed on October 4, 1939. The fourth subdivision of section 101, Oklahoma Statutes 1931, 12 Okl.St.Ann. § 95, subd. 4, provides that an action upon a statute for penalty or forfeiture shall be filed within one year after the cause of action shall have accrued and not afterwards, except where the statute imposing the liability prescribes a different limitation. That provision has application here, and since the suit was not filed until after the expiration of the prescribed period, the first and third causes of action (except that part of the latter which sought recovery for the withholding of city funds) were barred. Battles v. Conner, 182 Okl. 613, 79 P.2d 232.

We come next to the fourth and fifth causes of action in which recovery was sought on the respective bonds of two commissioners for the offsetting of water bills with claims for labor, and to that part of the sixth cause in which like recovery was sought on the bond of the mayor and manager. The city had a charter form of government. Section 12674, Oklahoma Statutes 1931, 68 Okl.St.Ann. § 286, requires the mayor and council of each city, or the officers exercising like power in a city having a charter form of government, to prepare and furnish the excise board of the county an itemized statement of estimated needs and probable income from sources other than ad valorem tax for current expenses for the current fiscal year; section 12677, 68 Okl.St.Ann. § 289, authorizes the excise board to revise and correct the estimate, and provides that when the board has examined, revised and adjusted the items it shall approve such items and appropriate the respective amounts thereof for the purposes specified, and that the appropriations for a city shall be itemized so as to show among other things the amount of funds appropriated for water; section 12678, 68 Okl.St.Ann. § 290, authorizes the excise board to make levies of ad valorem taxes upon property in each municipal subdivision with which to meet the appropriations, and provides that the several items of the estimate made by the board shall be an appropriation of funds for the several and specific purposes named in the estimate, that the appropriations made shall not be used for any other fiscal year or purpose whatever, that each clerk or issuing officer shall open and keep an account with the amount of each item of appropriation showing the purpose for which the appropriation was made, that no warrant shall be issued, approved, signed or registered against an appropriation for a purpose other than that for which it was made, or in excess of the amount of such appropriation; section 12681, 68 Okl.St. Ann. § 293, provides that the term "appropriation" shall be synonymous with that of "estimate made and approved," as defined in section 3, chapter 80, Laws of 1911, 62 Okl.St.Ann. § 473; section 12682, 62 Okl.

St.Ann. § 474, provides that every warrant must be drawn against a specific appropriation, and that as soon as it is issued it shall be signed, attested and delivered to the treasurer of the county or subdivision thereof issuing it for registration; section 5948, 62 Okl.St.Ann. § 471, provides that all public funds of a county or subdivision thereof shall be disbursed only in payment of legal warrants, bonds and interest coupons; section 5953, 62 Okl.St.Ann. § 477, provides that it shall be unlawful for any officer to issue, approve, sign, attest or register a warrant or certificate of indebtedness in any form in excess of the estimate of expenses made and approved for such year or authorized for such purpose, and that any warrant issued, approved, attested or registered in excess of the estimate made and approved shall not be a charge against the municipality, but may be collected by civil action from the offending officer, or from the surety or sureties on his bond; and section 5955, 62 Okl.St.Ann. § 479, provides that it shall be unlawful for the commissioners of any city to make any contract for, incur, acknowledge, approve, allow or authorize any indebtedness against the municipality, or authorize it to be done by others, in excess of the estimate made and approved by the excise board for such purpose for the current fiscal year, that any such indebtedness contracted, incurred, acknowledged, approved, allowed or authorized in excess of the appropriation shall not be a charge against the municipality but may be recovered by civil action from the officer whose acts offend the statute, or from his bondsmen.

■ The policy of offsetting water bills with claims for labor extended over many months. Several hundred transactions of that kind took place, aggregating thousands of dollars. Each instance of offsetting was tantamount to the water bill being paid in money, the money being covered into the city treasury, and the claim for labor being allowed and paid out of city funds. But other claims for all or substantially all of the appropriations made by the excise board for the current fiscal year were allowed and paid by warrant in the manner authorized by law. It therefore is readily apparent that the essence and effect of the action of the mayor and manager and the commissioners in offsetting claims against claims in the manner and under the circumstances outlined was to incur, acknowledge, approve, allow and authorize an indebtedness against the city in excess of the estimate made and approved by the excise board for such purpose, in contravention of laws of the state, particularly section 5955, supra, for which such section expressly makes the surety on their official bonds liable. It amounted to the unauthorized expenditure of city funds in excess of the appropriation made for that purpose. Regardless of the actuating motive, it constituted a wrongful misapplication of funds for which the company is liable. Cf. Dowler v. State, 179 Okl. 532, 66 P.2d 1081.

■ But the company contends that such causes of action were penal in nature and therefore barred by limitation in like manner to the causes on the bonds of the clerks. In State v. Ingram, 164 Okl. 244, 23 P.2d 648, an informing taxpayer sued the county assessor, the deputy assessor who was also county treasurer during part of the time in question, the county commissioners, a tax ferret, and the sureties on their official bonds. It was alleged that pursuant to a fraudulent scheme which the deputy assessor and the tax ferret entered into, properties listed for taxes were omitted from the rolls, the schedules were delivered to the tax ferret, he pretended to discover the properties and placed them on the rolls and received fifteen per cent of the amount paid as taxes which was divided among the assessor, the deputy assessor and the tax ferret. Recovery was sought against the three officers and the sureties on their official bonds for the amount of the money misappropriated, and in addition double recovery was sought against such officers under sections 5964 and 5965 of the statutes, 62 Okl.St.Ann. §§ 372, 373, supra. The court held that in respect to seeking recovery for the funds misappropriated the action was not one for a penalty, but that in respect to seeking double recovery it was for penalty. The city sought in these causes of action to recover for funds wrongfully expended. No additional recovery was sought. No double recovery was involved. The liability was therefore not penal in nature. The fifth subdivision of section 101, supra, provides that an action upon the official bonds or undertaking of an executor, administrator, guardian, sheriff, or any other officer can be brought only within five years after the cause of action shall have accrued, and not afterwards. In respect to limitation, that provision has application to a suit upon the official bonds of a mayor and manager and city commis-

sioners, except where a penalty is sought. National Surety Co. v. State, 111 Okl. 185, 239 P. 262; Arnold v. Board of Commissioners, 124 Okl. 42, 254 P. 31; James v. State, 160 Okl. 99, 15 P.2d 591. It may be that as an original proposition the applicable statutes relating to the liability of clerks in one instance and to that of mayor and manager and commissioners in the other fail to indicate a clear basis for the conclusion that the liability is penal in one and therefore barred by the one-year provision but not in the other. But the question does not come to us as an original proposition. The supreme court of the state has charted our course, and we must follow.

 It is further contended that the city failed to make out a case for recovery upon the bonds of the two commissioners in that no evidence was offered to show that they voted for the allowance of the claims used in offset against water bills. The minutes of the meetings were offered in evidence. They disclosed the presence of the mayor at all meetings; in most instances they recited the presence of all commissioners; in two instances the presence of Mudd was expressly noted but not that of Townsley; after Mudd's term expired, the presence of Townsley was noted in virtually all instances; and in some cases they were not entirely clear. They recited the approval of the claims, and in one or two instances recited that such claims were unanimously approved but were otherwise silent in respect to the manner in which any particular commissioner voted; and they failed to recite in any instance a vote against approval. No other evidence was offered touching the question. The argument is that although the commissioners were present at the opening of each meeting, still they may have departed or absented themselves when the particular action in question was taken. The case of Pickton v. City of Fargo, 10 N.D. 469, 88 N.W. 90, is relied upon to sustain the contention. There a statute of the state required that the yeas and nays be taken upon the passage of all ordinances and be entered upon the journal of the proceedings. An entry in the minutes showed by name eight members of the council present at the beginning of the meeting, and a subsequent entry recited that on the final passage of the ordinance in question eight members voted in the affirmative but did not record the yeas and nays by name. The court held that

there was a failure of compliance with the requirements of the statute. Section 6385, Oklahoma Statutes, 11 Okl.St.Ann. § 647, supra, provides that no ordinance for the borrowing or appropriation of money shall be valid unless a majority of all councilmen elected shall vote for it, and that the vote shall be taken by yeas and nays and entered upon the records. But no other statute has been called to our attention requiring that the vote of city commissioners be by yeas and nays. In the absence of a controlling statute or rule, all members of a legislative body present and not recorded as voting otherwise or as refusing to vote are presumed to have voted in the affirmative. United States v. Ballin, 144 U.S. 1, 12 S.Ct. 507, 36 L.Ed. 321; Abels v. McKeen, 18 N. J.Eq. 462. The minutes were sufficient to constitute a prima facie showing that the two commissioners voted for the action taken and to shift to the company the burden of showing otherwise. No effort was made to carry that burden.

 The court allowed interest upon the amount of the misappropriated funds from the end of the respective fiscal years during which the misappropriations occurred. That action is challenged. Section 9959 of the statutes, 23 Okl.St.Ann. § 6, supra, provides in substance that where damages are susceptible of calculation with reasonable certainty both as to amount and time when due, interest shall be allowed from that day, except during such time as the debtor may have been prevented by law or by act of the creditor from making payment. Here the misappropriated public funds were susceptible of calculation with reasonable certainty both in respect to amount and time, and the allowance of interest in such circumstances was proper. Cf. Blackwell Oil & Gas Co. v. Mid-Continent Petroleum Corporation, 182 Okl. 588, 79 P.2d 227; Hartford Accident & Indemnity Co. v. Collins-Dietz-Morris Co., 10 Cir., 80 F.2d 441.

 The city sought in the third cause of action to recover on the bond of Smith for money which he received in payment of water bills and appropriated to his own use. Like recovery was sought in the sixth cause on the bond of the mayor and manager. Evidence was adduced which tended to show that the mayor and manager and the clerk frequently gambled in the city building, that they sometimes took money from the cash till with which to engage in such pastime, and that the cash deposited in

572

the bank during the period in question was much less than that deposited during the preceding and the following year. But Smith testified that he accounted for all city funds coming into his hands, and that he replaced in the till all funds withdrawn for the purpose of gambling. The mayor and manager testified that he took some cash from the till from time to time but always put in his personal check which was paid, or otherwise accounted for the amount. And there was other testimony which tended to corroborate them. The court found in general language that the evidence failed to sustain the allegations of the complaint in respect to the charged misappropriations. The evidence presented an issue of fact for the trial court, and it was resolved against the city. It cannot be said that the finding was clearly erroneous, due regard being had for the opportunity of the trial court to see and observe the witnesses as well as their demeanor while testifying. The finding must therefore stand on appeal. Rules of Civil Procedure, 52(a), 28 U.S. C.A. following section 723c.

■ The city also sought in the sixth cause of action to recover on the bond of the mayor and manager for alleged wrongful acts in connection with the purchase and use of sewer pipe. The court found that after inspecting samples of the material offered at eighty cents per foot and that offered at ninety-five cents per foot, the commissioners accepted the bid for the latter; that the company submitting the bid delivered to the city 9,476 feet of pipe, for which the city paid ninety-five cents per foot; that employees of the city receipted for the pipe and delivered it to the Works Progress Administration for use in the completion of a project for the city; that the commissioners had nothing to do with the handling of the project, except to furnish the pipe; that the evidence failed to disclose that the mayor and manager personally had anything to do with the handling of the pipe; that while the circumstances surrounding the transaction were suspicious and the evidence failed to show that the city received any beneficial use of about 2,000 feet of such pipe, still there was no basis for a finding that the mayor and manager either conspired with the contractor to file a false claim or that he disposed of any of such pipe after it was delivered; and that the most which could

be said was that the matter had been handled negligently. Again, the evidence presented an issue of fact for the court; again, it cannot be said that the finding was clearly erroneous, due regard being had for the opportunity of the trial court to observe the witnesses and judge of their credibility; and again, the finding cannot be overturned on appeal. Rule 52(a), supra.

■ The remaining question is whether the full amount which the city received frm the sureties on the official bonds of other commissioners should have been treated as a credit on the amount for which the company was liable in this case. Where a creditor holds more than one debt or claim against his debtor, or where a single debt or claim consists of several items, the debtor has the right to direct the debt or item on which a payment shall be credited, and it is the duty of the creditor to make application as directed. Wheeler v. American Investment Co., 167 Okl. 558, 31 P.2d 117; Sipes v. John, 177 Okl. 299, 58 P.2d 854. But where the debtor fails to direct how a payment shall be applied, and in the absence of equities of third persons, the creditor is ordinarily free to make the application in the manner of his choice. Sipes v. John, supra. There was no showing that any specific directions were given in respect of the manner in which the payments in question should be applied. Neither was there any indication that any part of the money was applied to a liability which had become barred by the five-year statute of limitation to which reference has been made. In the absence of direction, the city was free to apply the amount as it saw fit. Other than a payment expressly or impliedly made on the offset claims pleaded in the complaint in this cause, this company, as surety on the bonds of the mayor and manager and the two commissioners whose bonds are involved here, had no equity in the payments which those sureties made. And since it had no such equity, the city was not required to make application in a manner most beneficial to it. Southwestern Surety Insurance Co. v. Neal, 81 Okl. 194, 197 P. 439; Sipes v. John, supra.

For the error in allowing the company credit for the full amount paid by the sureties on the bonds of other commissioners, the judgment is reversed and the cause remanded.